JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Gordon Mallette ("Mallette"), appeals his conviction, sentence, and sexual predator status. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2005, Mallette was charged with twelve counts of rape and twelve counts of kidnapping. All charges specified that the victim was under the age of ten. The rape charges additionally specified that Mallette used force or the threat of force, and the kidnapping charges specified that the crimes were committed with a sexual motivation.
 {¶ 3} The following evidence was adduced at Mallette's jury trial.
 {¶ 4} The victim, L.M., was born in 1994. From kindergarten through third grade, he lived with his mother ("mother") and stepfather on the second floor of his grandmother's home. L.M.'s grandmother lived with Mallette, but the couple had separate bedrooms. *Page 3 
 {¶ 5} In July 2005, mother received a call from a neighbor complaining that eleven-year-old L.M. had pulled down a girl's bathing suit and made a sexual remark to the girl. The next day, L.M. went to his father's house for a scheduled visit. L.M.'s father discussed the incident with his son. When pressed by his father about his actions and asked where he had learned that type of behavior, L.M. replied that he learned it from Mallette. L.M. then revealed that Mallette had repeatedly molested him.
 {¶ 6} L.M.'s parents notified the police. L.M. was interviewed by a sex-crimes detective and a caseworker at the Medina County Department of Children and Family Services. L.M. also met with a counselor and underwent a physical examination, which revealed no physical signs of sexual abuse.
 {¶ 7} L.M. testified that when he was in the first grade, he and Mallette began touching each other's genitals and buttocks. L.M. testified that, by the second grade, the conduct had escalated to oral sex.[1] He estimated that the oral sex occurred twenty to thirty times. L.M. also testified that Mallette attempted anal intercourse ten to fifteen times, and Mallette also tried to force L.M. to perform anal sex on him, but L.M. refused. He testified that all these acts occurred at his grandmother's residence, either in the living room or in Mallette's bedroom. L.M. *Page 4 
testified that the sexual activity became less frequent when he was in the third grade and then stopped entirely when his family moved away.
 {¶ 8} Mallette testified on his own behalf and denied any sexual contact with L.M.
 {¶ 9} The jury convicted Mallette of all counts and specifications. The trial court designated Mallette a sexual predator and sentenced him to twelve consecutive life sentences. Mallette now appeals, raising six assignments of error.
 Hearsay Testimony {¶ 10} In the first assignment of error, Mallette argues that the trial court erred by permitting hearsay testimony.
 {¶ 11} Mallette claims that the trial court erred when it permitted prosecution witnesses to testify to inadmissible hearsay statements. Mallette argues that the trial court, over defense objection, allowed witnesses to testify to hearsay statements solely to bolster L.M.'s credibility.
 {¶ 12} The trial court has broad discretion in the admission of evidence and, unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere. State v. Cooper, Cuyahoga App. No. 86437,2006-Ohio-817, citing State v. Hymore (1967), 9 Ohio St.2d 122, 128,224 N.E.2d 126. Moreover, if trial counsel fails to object to the admission of certain evidence or testimony, the objection is waived unless there is plain error in the admission. To prevail under a plain error analysis, a defendant *Page 5 
bears the burden of demonstrating that, but for the error, the outcome of the trial clearly would have been different. State v. Alexander,
Cuyahoga App. No. 87109, 2006-Ohio-4760; see Crim.R. 52(B). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id., citing State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804.
 {¶ 13} Mallette cites various transcript pages in the table of contents of his brief which refer to the testimony of L.M.'s mother, stepmother, father, and social worker. He fails, however, to even mention the testimony of the mother, stepmother, or social worker within the argument for the assigned error or to cite that part of the record. In fact, Mallette refers to only the father's testimony in his argument. Mallette has failed to support or demonstrate that any witness other than the father provided hearsay testimony, and we decline to make his arguments for him, because it is not our duty to root out all possible arguments. See Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673; see App.R. 12(A)(2) and App.R. 16(A). Therefore, we will review only the father's testimony, to which he has referred. Further, and contrary to Mallette's assertions, trial counsel did not object to the father's testimony at trial; thus, we review the father's testimony solely for plain error.
 {¶ 14} "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter *Page 6 
asserted." Evid.R. 801(C). L.M.'s father testified that L.M. disclosed to him where the abuse occurred, that Mallette had touched L.M.'s penis and buttocks, masturbated in his presence, performed oral sex, and attempted anal intercourse.
 {¶ 15} We find that this testimony was part of a line of questioning to show how the father learned of the alleged abuse, his actions subsequent to the disclosure, and to describe the events that led to police involvement and eventually criminal charges against Mallette.
 {¶ 16} In State v. Thomas (1980), 61 Ohio St.2d 223, 400 N.E.2d 401, the Court, in discussing similar testimony, found that:
 "The testimony at issue was offered to explain the subsequent investigative activities of the witnesses. It was not offered to prove the truth of the matter asserted. It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. * * * The testimony was properly admitted for this purpose."
 {¶ 17} See also, State v. Byrd, Cuyahoga App. No. 82145, 2003-Ohio-3958.
 {¶ 18} We find that the father's statements about the sexual abuse did not constitute impermissible hearsay. The testimony regarding this information was not offered to prove the truth of the matter asserted, that is, to show that the abuse occurred, but to show how the witness proceeded with the information provided by *Page 7 
the child. We therefore conclude that the trial court did not commit error, plain or otherwise, in allowing the father's testimony.
 {¶ 19} However, even if it was error to allow this testimony, we find that it was not so prejudicial as to constitute reversible error. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and will not be grounds for reversal. State v. Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, paragraph three of the syllabus, vacated on other grounds, Lytle v.Ohio (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154; see also, Crim.R. 52(A) (any error will be deemed harmless if it does not affect the defendant's substantial rights).
 {¶ 20} In this case, ample evidence existed to convict Mallette, even excluding the father's testimony. L.M. testified about the abuse as well as the events leading to his disclosure to his father. Therefore, the first assignment of error is overruled.
 Sufficiency and Manifest Weight of the Evidence {¶ 21} In the second assignment of error, Mallette argues that the State failed to present sufficient evidence to sustain a conviction. In the third assignment of error, Mallette argues that his convictions are against the manifest weight of the evidence. Although these arguments involve different standards of review, we consider them together because we find the evidence in the record applies equally to both.
 {¶ 22} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at *Page 8 
trial. State v. Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52,678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 23} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." Thompkins, supra, at 387. As the Ohio Supreme Court declared:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" Id.
 {¶ 24} This court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. State v. Bruno, *Page 9 
Cuyahoga App. No. 84883, 2005-Ohio-1862. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, a reviewing court cannot reverse a conviction unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Garrow (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814.
 {¶ 25} The jury convicted Mallette of twelve counts of rape and twelve counts of kidnapping. The statute governing rape, R.C. 2907.02(A)(1)(b), provides that "no person shall engage in sexual conduct with another when the other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2905.01 prohibits kidnapping and provides in pertinent part:
 "(A) No person * * * in the case of a victim under the age of thirteen * * *, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 (2) To facilitate the commission of any felony * * *;
 (4) To engage in sexual activity * * * with the victim against the victim's will. * * * *Page 10 
 {¶ 26} Mallette claims that the evidence is insufficient to sustain his convictions, and his convictions are against the manifest weight of that evidence because: (1) there was no physical evidence, (2) L.M. did not tell anyone about the abuse for years, (3) L.M. was the only witness to testify about the crime, and (4) Mallette is a sixty-two-year-old grandfather with a "good reputation" and no prior criminal record.
 {¶ 27} We first note that proof of guilt may be made by real evidence, circumstantial evidence, and direct or testimonial evidence, or any combination of the three, and all three have equal probative value.State v. Nicely (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236;Jenks, supra.
 {¶ 28} It is not surprising that there was no physical evidence of the abuse because L.M. did not tell anyone about it until two years after the abuse ended. The fact that there was no eyewitness to the molestation is also not surprising, given the secretive nature of the abuse. Moreover, physical evidence or eyewitness testimony was not necessary, given the victim's testimony detailing the years of abuse.
 {¶ 29} L.M. testified that the abuse occurred both when he was home alone with Mallette and when his grandmother was home. The sexual acts occurred either on the couch in the living room or in Mallette's bedroom. L.M. explained in detail the precautions Mallette would take in order to conceal the sexual acts. L.M. described how he would stand on the bed to look out the bedroom window to see if anyone *Page 11 
was coming. L.M. detailed how the abuse occurred with their clothes on and how they would quickly zip their pants if they heard the grandmother approaching.
 {¶ 30} L.M.'s testimony revealed a pattern of abuse that lasted approximately three years. He was able to describe distinct and multiple instances of abuse in graphic detail. Further, we find that witnesses for the State and the defense corroborated L.M.'s version of events. L.M.'s grandmother testified that she once walked into the living room and saw L.M. on the couch with Mallette, and L.M. had a "guilty" look on his face. Other family members testified that Mallette had frequently made inappropriate sexual gestures and comments toward them. L.M.'s clinical counselor testified that it is not uncommon for a delay to occur between the acts of sexual abuse and disclosure. Although Mallette testified that he never touched L.M. inappropriately, it was within the jury's province to determine whose testimony was more credible. A review of the testimony of the witnesses to whom L.M. disclosed the abuse reveals consistency from the time of disclosure through trial.
 {¶ 31} As to L.M.'s credibility, the weight and credibility to be given to that testimony were matters for the jury to determine. In addition, we note that Mallette's argument against conviction supports a manifest weight argument but fails to attack the sufficiency of the evidence. The main premise of his argument is that L.M. is not to be believed. In our review for sufficiency of the evidence, we assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.Thompkins, supra. Witness credibility, on *Page 12 
the other hand. is a matter for the trier of fact and supports only his argument regarding the manifest weight of the evidence.
 {¶ 32} Therefore, we find that there was sufficient evidence to sustain the conviction. We also find that the jury did not lose its way and create such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. The second and third assignments of error are overruled.
 Sentence {¶ 33} Mallette's fourth and fifth assignments of error challenge his sentence. Mallette argues that the trial court erred in sentencing him to consecutive and maximum sentences without making the appropriate findings.
 {¶ 34} The Ohio Supreme Court has declared R.C. 2929.14(E)(4), which governed consecutive sentences, and R.C. 2929.14(C), which governed maximum sentences, unconstitutional and excised the offending parts of the statutes from the statutory scheme. State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, applying United States v. Booker
(2005), 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621; Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 andApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435.
 {¶ 35} In Foster, supra at ¶ 61, 64, and 67, the Ohio Supreme Court held that judicial fact-finding to impose the maximum or a consecutive sentence is unconstitutional in light of Blakely. The Court also held that "after the severance, *Page 13 
judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant." Foster, supra at ¶ 99. As a result, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings and give reasons for imposing maximum, consecutive or more than the minimum sentence." Foster, supra at paragraph seven of the syllabus, andState v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus.
 {¶ 36} R.C. 2971.03(A)(2) mandates a life sentence without parole for a forcible rape upon a victim less than thirteen years of age. Because the jury in this case found both that L.M. was less than thirteen years old at the time the abuse occurred and that force or the threat of force was used to commit the rapes, the trial court was required to impose a life sentence. The trial court sentenced Mallette to the maximum ten-year sentence for each count of kidnapping and ran the sentences concurrent to the life sentence for each count of rape. The trial court then ran each life sentence consecutive, for a total of twelve consecutive life sentences. Pursuant to Foster, the trial court was not required to make any findings before imposing its sentence and had full discretion to sentence Mallette within the statutory range. Moreover, the trial court made no findings under the now unconstitutional statutes; thus, we find no error in the sentences. *Page 14 
 {¶ 37} Mallette next argues that Foster should not apply to his case because his alleged crimes occurred prior to the Foster decision. He also claims that his due process rights were violated with an ex post facto application of Foster because the alleged crimes occurred beforeFoster was released.
 {¶ 38} Foster addresses the constitutionality of sentences imposed pursuant to Am. Sub. S.B. No. 2, effective July 1, 1996. S.B. 2 is applicable to all offenses committed on or after that date. SeeState v. Rush, 83 Ohio St.3d 53, 1998-Ohio-423, 697 N.E.2d 634, certiorari denied (1999), 525 U.S. 1151, 119 S.Ct. 1052, 143 L.Ed.2d 58. Additionally, because Foster applies to all cases on direct review,Foster applies to the instant case.
 {¶ 39} We next consider whether Foster violates the Ex Post Facto Clause.
 {¶ 40} The Ex Post Facto Clause of Article I, Section 10 of the United States Constitution prohibits "every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." See Rogers v. Tennessee (2001), 352 U.S. 451,121 S.Ct. 1693, 149 L.Ed.2d 697 quoting Calder v. Bull (1798), 3 U.S. 386, 3 Dallas 386, 390, 1 L.Ed. 648, 3 Dall. 386 (seriatim opinion of Chase, J.). The United States Supreme Court placed similar restrictions on judicial opinions in Bouie v. Columbia (1964), 378 U.S. 347,84 S.Ct. 1697, 12 L.Ed.2d 894.
 {¶ 41} The Ohio Supreme Court has recognized that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex *Page 15 
post facto law" and can violate due process "even though the constitutional prohibition against ex post facto laws is applicable only to legislative enactments." State v. Garner, 74 Ohio St.3d 49,1995-Ohio-168, 656 N.E.2d 623, quoting Bouie, supra, and citingMarks v. United States (1997), 430 U.S. 188, 191-192, 97 S.Ct. 990,51 L.Ed.2d 260.
 {¶ 42} Thus, we look at both the federal and state constitutional ramifications of Foster. See State v. McGhee, Shelby App. No. 17-06-05,2006-Ohio-5162 and State v. Elswick, Lake App. No. 2006-L-075,2006-Ohio-7011. With respect to federal constitutional considerations, we note that due process guarantees notice and a hearing. Because the right to a hearing has not been implicated by Foster, we are concerned only with notice given to the defendant as to his potential sentence. InMcGhee, supra at ¶ 15, the court found that "most federal circuit courts have held that defendants were on notice as to statutory maximums, regardless of whether the federal sentencing guidelines were mandatory." Id., (citations omitted). The McGhee court concluded that:
 "[b]ecause [the defendant-appellant] knew the potential statutory sentence for committing a first degree felony, because he had notice that Ohio's sentencing statutes were subject to judicial scrutiny, and because McGhee was unlikely to amend his criminal behavior in light of a sentencing change, we cannot find the Ohio Supreme Court's holding in Foster violates federal notions of due process as established in Bouie and Rogers.''' Id. at ¶ 19.
 {¶ 43} In considering the state constitution, we look at the Ohio Supreme Court's intention behind the retroactive application ofFoster. The Court applied its *Page 16 
holding retroactively, but only to cases on direct appeal and those pending in the trial courts. Id. at ¶ 104. Foster applies retroactively because the court did not limit its holding to offenses committed on or after February 27, 2006.
 {¶ 44} A retroactive law is not necessarily unconstitutional. "A substantive retroactive law is unconstitutional, while a remedial retroactive law is not.* * * A statute is substantive if it Impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction.'" Smith v. Smith, 109 Ohio St.3d, 285, 2006-Ohio-2419, quoting Beilat v. Beilat, 87 Ohio St.3d 350, 354, 2000-Ohio-451,721 N.E.2d 28.
 {¶ 45} As the appellate court stated in Elswick:
 '"[A] presumed sentence can be `taken away' without the defendant's consent.' McGhee
at ¶ 24. Thus, no vested right has been affected by Foster. Id. In addition, no accrued substantial right has been affected. Id. at ¶ 25. `[Defendants are not entitled to enforce or protect specific sentences prior to sentencing.' Id. A range of determinative sentences available for each degree of felony offense is established in R.C. 2929.14(A). `Even under S.B.2, defendants could not expect a specific sentence because judges could make findings to sentence anywhere within the range provided by R.C. 2929.14(A).' Id. " Elswick, supra at _29.
 {¶ 46} Furthermore, the Foster court held that the Ohio sentencing scheme was intended to allow trial courts to select sentences within a range. The Foster court explained that:
 "[T]he General Assembly provided a sentencing scheme of `guided discretion,' for judges, intending that the required findings guide trial courts to select sentences within a range rather than to mandate specific sentences within that range. When mandatory sentences are intended, they are *Page 17 
 expressed. We, therefore, reject the criminal defendants' proposed remedy of presumptive minimum sentences, for we do not believe that the General Assembly would have limited so greatly the sentencing court's ability to impose an appropriate penalty." Id. at ¶ 89.
 {¶ 47} In the instant case, Mallette had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced. Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none existed. As a result, we conclude that the remedial holding of Foster does not violate Mallette's due process rights or the ex post facto principles contained therein.
 {¶ 48} Therefore, we overrule the fourth and fifth assignments of error.
 Sexual Predator Classification {¶ 49} In the sixth assignment of error, Mallette argues that the trial court erred when it classified him as a sexual predator because the court did not engage in a "meaningful analysis" and because the State failed to provide sufficient proof of a "likelihood to commit future crime."
 {¶ 50} A sexual predator is defined in R.C. 2950.01(E) as a person who has been convicted of or pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. Thus, before classifying an offender as a sexual predator, the court must find by clear and *Page 18 
convincing evidence that an offender is likely to commit a sexually oriented offense in the future. R.C. 2950.09(B)(4).
 {¶ 51} In State v. Eppinger, infra, the Ohio Supreme Court defined the clear and convincing evidence standard as follows:
 "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
State v. Eppinger, 91 Ohio St.3d 158, 164, 2001-Ohio-247,743 N.E.2d 881, citing Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118. In reviewing a trial court's decision based on clear and convincing evidence, an appellate court must examine the record to determine whether sufficient evidence exists to satisfy the requisite degree of proof. State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54.
 {¶ 52} Pursuant to R.C. 2950.09(B)(3), when making a determination as to whether an offender is a sexual predator, the trial court must consider all relevant factors, including but not limited to the following: the offender's age and prior criminal record, the age of the victim, whether the offense involved multiple victims, whether the offender used drugs or alcohol to impair the victim, whether the offender completed any sentence imposed for any conviction, whether the offender participated in available programs for sexual offenders, any mental disease or *Page 19 
disability of the offender, whether the offender engaged in a pattern of abuse or displayed cruelty toward the victim, and any additional behavioral characteristics that contribute to the offender's conduct. R.C. 2950.09(B)(3)(a)-(j).
 {¶ 53} R.C. 2950.09(B)(2) does not require that each factor be met. It simply requires the trial court consider those factors that are relevant. State v. Cook, 83 Ohio St.3d 404, 426, 1998-Ohio-291,700 N.E.2d 570; State v. Grimes (2001), 143 Ohio App.3d 86, 89,757 N.E.2d 413. Further, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge." Schiebel, supra at 74, citing Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 54} Mallette argues that the State failed to establish by clear and convincing evidence that he is likely to engage in one or more sexually oriented offenses in the future. Mallette points to his advanced age at the time of sentencing and his lack of criminal history.
 {¶ 55} The record demonstrates that the court considered all the factors under R.C. 2950.09(B). The court made specific and thorough findings regarding each factor and found by clear and convincing evidence that Mallette is likely to commit a sexually oriented offense in the future.
 {¶ 56} At the time the offenses were committed, the victim was under age ten. The court found that L.M. was Mallette's only victim, but also took into consideration *Page 20 
the testimony of other family members regarding situations in which Mallette made inappropriate sexual gestures or comments toward them. The court noted that Mallette did not use alcohol or drugs to impair his victim. The court found, however, that Mallette "groomed" L.M. for molestation and turned him into his "child sex slave." The court also noted that Mallette used his position of authority to facilitate his crimes. The court concluded that the nature of the abuse was so egregious that it was "one of the worst cases of molestation this court has ever [seen]."
 {¶ 57} Therefore, we find clear and convincing evidence existed to support the trial court's decision classifying Mallette as a sexual predator. The sixth assignment of error is overruled.
Accordingly, judgment is affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 21 
ANTHONY O. CALABRESE, JR., J. and ANN DYKE, J. CONCUR
[1] The indictment specified acts that occurred only when L.M. was in the second grade. *Page 1