JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Richard Stadmire ("appellant"), appeals his convictions and sentences for rape, aggravated robbery and kidnapping. For the reasons set forth below, we affirm.
 {¶ 2} On January 31, 2005, the Cuyahoga County Grand Jury indicted appellant on four counts: counts one and two alleged rape, in violation of R.C. 2907.02, each with a sexually violent predator specification and a three-year firearm specification; count three alleged aggravated robbery, in violation of R.C. 2911.01, with a three-year firearm specification; and count four alleged kidnapping, in violation of R.C.2905.01, with a sexual motivation specification and a three-year firearm specification. Appellant pled not guilty to all charges in the indictment.
 {¶ 3} The case proceeded to a jury trial on June 5, 2006. At trial, the state presented the following facts. On the evening of April 28, 2001, Lisa Bower, the victim, arrived home around 11:00 p.m. and entered her apartment via the side door. She walked down a few steps into her kitchen, turned on the lights, and placed some bags on the kitchen table. She heard some voices, which was not unusual, and traversed back up the steps to lock the deadbolt on the door she had recently entered. Upon reaching the top of the steps, a male put a gun to her neck, led her back down the steps, and into her apartment. A second male followed them.
 {¶ 4} The male with the gun forced her into the kitchen, against a wall, and struck her in the head with the gun. He then ordered her onto the floor, while the *Page 4 
other male searched her house for items to steal. While the victim was on the floor, the man with the gun ordered her to remove her pants and underpants. As he assisted her in doing so, the victim saw the face of her assailant. When her pants were off, he pulled her shirt up over her face, also covered her face with a towel, and ordered her to remain still. Pointing the gun to her head, the other male, who had previously pillaged the home, digitally penetrated the victim and then proceeded to force sexual intercourse upon her. When he finished ejaculating inside her, the other assailant with the gun, forced sexual intercourse upon her but did not ejaculate.
 {¶ 5} The males then exited the apartment, taking the victim's purse, which contained about $30.00, a jar of coins and a cell phone.
 {¶ 6} The victim, left on the kitchen floor, got up shortly thereafter, covered herself in a coat, and went to a neighbor's apartment. She asked them to call the police. Appellant also telephoned her aunt and told her of the rapes.
 {¶ 7} Shortly thereafter, the police arrived. After briefly speaking with the victim, the police transported her to the hospital where a rape examination was conducted, a rape kit retrieved, and she was treated for her injuries, which included bruising to her head. Additionally, the police confiscated the victim's coat for examination.
 {¶ 8} During their investigation, the detectives learned that Christopher Miller used the victim's stolen cell phone the morning after the rape. Accordingly, the *Page 5 
detectives showed the victim a picture of Miller, whom she identified as the man with the gun and the second man to rape her. Consequently, the detectives arrested Miller.
 {¶ 9} They extracted DNA from Miller while he was under arrest. The DNA was compared to a vaginal swab and cotton ball from the rape kit, as well as semen found on the coat retrieved from the victim. The DNA examination, however, revealed that the semen found did not belong to Miller but to another individual.
The police ran the DNA from the semen through a national databank in 2001 but were unsuccessful in identifying the second assailant. It was not until August of 2004 when members of the Ohio Bureau of Criminal Identification notified the police of a DNA match for the semen to Richard Stadmire, the appellant.
 {¶ 10} Based upon this information, Detective Mark Schmitt obtained a search warrant for appellant's DNA. As suspected, the appellant's DNA matched that of the DNA obtained from the victim's rape examination and coat.
 {¶ 11} Additionally, the state presented the testimony of Charles Boyd at trial. He testified that he stood as a look-out for appellant and Miller while they raped the victim and pillaged her home. He explained that he entered the apartment after the rapes and noticed the victim on the floor with a towel over her head. Boyd denied knowing Miller prior to April 28, 2001 but admitted to previously being arrested with appellant on other theft charges. Finally, Boyd admitted that he testified as a result *Page 6 
of a plea bargain reached with the state for a more lenient sentence for his involvement in this incident.
 {¶ 12} At the conclusion of the state's evidence, appellant moved for acquittal, pursuant to Crim.R. 29(A). The trial court denied his request and he proceeded by presenting Christopher Miller for examination.
 {¶ 13} Miller denied knowing defendant or Charles Boyd. He did admit, however, to meeting Boyd in prison briefly. Additionally, Miller contended that he was wrongly convicted but admitted to having the victim's cell phone.
 {¶ 14} Appellant then rested his case and renewed his motion for acquittal, which was again overruled.
 {¶ 15} On June 12, 2006, the jury found appellant guilty of rape with a three-year firearm specification, aggravated robbery with a three-year firearm specification and kidnapping with a sexual motivation and three-year firearm specification. The court referred appellant to the probation department and scheduled a sentencing hearing for August 21, 2006.
 {¶ 16} Following the jury verdicts and prior to proceeding to a bifurcated hearing on the sexually violent predator specifications, the state dismissed the sexually violent predator specifications in the indictment pursuant to State v. Smith, 104 Ohio St.3d 106,2004-Ohio-6238, 818 N.E.2d 283.
 {¶ 17} On August 21, 2006, the trial court sentenced appellant. The two rape, aggravated robbery and kidnapping convictions are felonies of the first degree. *Page 7 
Accordingly, pursuant to R.C. 2929.14(A)(1), the statutory range for imprisonment is three to ten years. The trial court stayed within this range and sentenced appellant to the maximum sentence for each of the underlying counts, ten years, and ordered those sentences to be served consecutively to each other, for a total of 40 years. The court also imposed a three-year sentence for each of the gun specifications but ordered those to be served concurrently to each other and consecutively to the underlying felony convictions, for a total of 43 years imprisonment.
 {¶ 18} Appellant now appeals and asserts five assignments of error for our review. Appellant's first assignment of error states:
 {¶ 19} "The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against appellant."
 {¶ 20} Within this assignment of error, appellant maintains that the trial court erred in not granting appellant's motion for acquittal on all charges. We disagree.
 {¶ 21} Motions for judgments of acquittal are governed by Crim.R. 29(A) which states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 22} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would *Page 8 
support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The motion "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987), 33 Ohio St.3d 19, 23,514 N.E.2d 394.
 {¶ 23} In the instant action, appellant was charged and convicted of two counts of rape. R.C. 2907.02(A)(2) states in pertinent part as follows:
 {¶ 24} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 25} Additionally, appellant was convicted of aggravated robbery, which is defined in R.C. 2911.01 as follows:
 {¶ 26} " (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 27} Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; * * *."
 {¶ 28} Finally, appellant was convicted of kidnapping, R.C. 2905.01, which states in relevant part as follows: *Page 9 
 {¶ 29} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 30} * * (2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear; * * *."
 {¶ 31} In light of the abundant testimony and evidence offered at trial, we find that the state presented sufficient evidence that appellant raped the victim twice, robbed her, and restrained her liberty, committing all crimes by gunpoint. First, the victim testified that Miller, accompanied by another male, pointed a gun at her neck, forced her to the kitchen, then against a wall, and pistol whipped her. Miller then forced her to the floor, ordered her to disrobe, pulled her shirt over her head and placed a towel over her face. She further testified that Miller continued to point the gun to her head while the other male digitally penetrated her against her will and then, in a separate act, forcefully engaged in sexual intercourse with her and ejaculated in her vagina. DNA tests revealed the sperm found in her vagina belonged to appellant and no one else. In fact, Carey Martin, a forensic scientist with the Cuyahoga County Coroner's Office, testified that the probability that the DNA of the sperm found on the victim did not belong to appellant was 1 in quadrillion.
 {¶ 32} Moreover, the victim testified that the men took her cell phone, purse, about $30.00 and a jar of coins from her apartment. Detective Schmitt testified and *Page 10 
Christopher Miller admitted upon cross-examination that he had the victim's cell phone in his possession. Finally, Charles Boyd admitted to standing look-out while appellant and Miller robbed appellant by gunpoint. He also testified that Miller handed him $20.00 upon exiting the apartment. Finally, he corroborated the victim's testimony that she was on the kitchen floor with a towel over her face when the three men left the premises.
 {¶ 33} Accordingly, in viewing the evidence in a light most favorable to the prosecution, sufficient evidence existed for the court to conclude beyond a reasonable doubt that appellant was guilty of two counts of rape, aggravated robbery, kidnapping and the gun specifications. Therefore, appellant's first assignment of error is without merit.
 {¶ 34} Appellant's second assignment of error states:
 {¶ 35} "Appellant's convictions are against the manifest weight of the evidence."
 {¶ 36} In State v. Thompkins, 78 Ohio St.3d 380, 388, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 37} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find *Page 11 
the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 38} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror`" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211,72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. SeeState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 39} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 40} In this matter, we cannot conclude that the jury lost its way. As stated previously, the victim testified to being forced by gunpoint into the kitchen, to being pistol whipped in the head, forced onto the floor, and ordered to remain still while appellant digitally penetrated her against her will, forcefully engaged in sexual intercourse, and robbed her of various items from her apartment. Additionally, DNA evidence affirmatively established that appellant's semen was found in the victim's *Page 12 
vagina and on her coat shortly after the rapes. Moreover, Charles Boyd corroborated her testimony that she was robbed by appellant and Miller and that she was on the kitchen floor with a towel over her face when the three men left. The only conflicting evidence offered was the testimony of Miller, who was also convicted of raping the victim in 2001 and who admitted to possessing her cell phone. Accordingly, after reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot disagree with the jury's resolution finding appellant guilty on the two counts of rape, aggravated robbery and kidnapping, as well as the gun specifications attached to those charges. Therefore, appellant's second assignment of error is overruled.
 {¶ 41} Appellant's third assignment of error states:
 {¶ 42} "The trial court erred by ordering convictions and consecutive sentences for separate counts of rape and kidnapping because the offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14."
 {¶ 43} In this assignment of error, appellant maintains that the trial court erred in failing to merge his two convictions for rape with the kidnapping conviction. Appellant argues the convictions for rape and kidnapping are allied offenses of similar import. Similarly, appellant contends that the multiple counts of rape should have merged and he should have been sentenced on only one count because the offenses are allied and of similar import. Appellant further asserts that the *Page 13 
convictions are part of a single transaction. For the following reasons, we find each of appellant's contentions without merit.
 {¶ 44} R.C. 2941.25 provides direction when determining whether two separate charges constitute allied offenses of similar import. This statute states:
 {¶ 45} " (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 46} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 47} In State v. Blankenship (1988), 38 Ohio St.3d 116,526 N.E.2d 816, the Supreme Court of Ohio enumerated a two-part test to determine whether merger is appropriate pursuant to R.C. 2941.25. First, a court must compare the elements of the two offenses and "if the elements * * * correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step" of the analysis. Id. at 117. In the second step, the court reviews the defendant's conduct and determines whether the crimes were committed separately or with a *Page 14 
separate animus for each crime. If so, the defendant can be convicted of both offenses. Id.
 {¶ 48} In State v. Donald (1979), 57 Ohio St.2d 73, 386 N.E.2d 1341, the Supreme Court of Ohio determined that kidnapping is an "offense of similar import" to rape for purposes of R.C. 2941.25. Thus, our determination turns to whether the offenses were committed separately or with a separate animus.
 {¶ 49} "The test for determining whether kidnapping and rape were committed with a separate animus is `whether the restraint or movement of the victim is merely incidental to a separate underlying crime, or instead, whether it has a significance independent of the other offense.' Moreover, `where the asportation or restraint of the victim subjects the victim to substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.' Prolonged restraint, secretive confinement, or substantial movement of the victim are factors that establish a separate animus for kidnapping."
 {¶ 50} State v. Evans, Cuyahoga App. No. 85396, 2005-Ohio-3847, quoting and relying on State v. Logan (1979), 60 Ohio St.2d 126,397 N.E.2d 1345.
 {¶ 51} In the instant matter, the evidence demonstrates that Miller and appellant entered the victim's apartment and ordered her by gunpoint down the steps into the kitchen. Once in the kitchen, the victim was thrown against a wall and forcefully struck in the head with the gun. While appellant searched the house for *Page 15 
valuables, the victim informed the men that she only had $25.00. She was told that was not enough and then was directed by gunpoint from the wall to the kitchen floor. While a gun was pointed at her head, Miller ordered her to disrobe and pulled her shirt over her head. A towel was then placed over her face. When appellant returned from pillaging the apartment, he digitally penetrated her, and then forced sexual intercourse upon her, finishing only upon ejaculation. He remained in the apartment while Miller then forced sexual intercourse upon the victim. After Miller finished the rape and more than five minutes thereafter, Miller and appellant continued to ransack the apartment. They also kicked the victim a number of times in the face. Then, and only then, did the men flee the scene.
 {¶ 52} We find that the prolonged restraint and substantial movement of the victim from the steps to the kitchen wall and then to the floor constitutes separate conduct apart from the rape. We also note that the confinement in the apartment was secretive and the victim was not released immediately following the rape. Accordingly, we find that the restraint used to facilitate the kidnapping was independent of, and not merely incidental to, that used to facilitate the rape. Consequently, appellant had a separate animus to commit the kidnapping. The trial court did not err in convicting appellant of both rape and kidnapping.
 {¶ 53} Additionally, we find that the two counts of rape are offenses of similar import, but were committed separately, and thus, not merged for sentencing purposes. The Supreme Court has specifically found that a defendant that engages *Page 16 
in fellatio followed immediately by vaginal intercourse committed "two * * * offenses of * * * similar kind * * * separately * * * [and] with a separate animus as to each * * *" within the meaning of division (B) of R.C. 2941.25." State v. Barnes (1981), 68 Ohio St.2d 13, 14,427 N.E.2d 517. Thus, a defendant may be convicted of both. Id.
 {¶ 54} In the instant matter, one offense of rape involved digital penetration while the other involved penile penetration. Keeping in line with Barnes, supra, we find appellant committed two offenses of similar import separately and with a separate intent as to each. Accordingly, the trial court properly convicted and sentenced appellant separately for both crimes.
 {¶ 55} Finally, appellant argues that the court improperly sentenced him to consecutive sentences on the rapes, kidnapping and aggravated robbery charges even though they were part of a single "transaction." We find appellant's argument misplaced.
 {¶ 56} R.C. 2929.14(D)(1)(b) provides the following: "A court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section [governing sentencing on firearm specifications] for felonies committed as part of the same act or transaction." This statute is only applicable for the purpose of whether or not to impose firearm specifications consecutively. It does not apply to the underlying felonies of rape, kidnapping and aggravated robbery. Accordingly, appellant's argument is misplaced. Furthermore, because the trial court imposed *Page 17 
the three-year firearm specifications concurrently rather than consecutively, we uphold appellant's three-year sentence for the firearm specifications as well.
 {¶ 57} For the reasons proffered above, appellant's third assignment of error is overruled.
 {¶ 58} Appellant's fourth assignment of error states:
 {¶ 59} "The trial court erred by ordering appellant to serve a consecutive sentence."
 {¶ 60} Appellant's fifth assignment of error states:
 {¶ 61} "The trial court erred when it sentenced appellant to a maximum sentence."
 {¶ 62} In the interests of convenience, we will address appellant's fourth and fifth assignments of error simultaneously as both concern the trial court's imposition of appellant's sentence. In his fourth assignment of error, appellant contends the trial court erred in imposing consecutive sentences without first ordering a concurrent sentence and by making findings not supported by the record. Likewise, in his fifth assignment of error, appellant argues that the court erred in ordering maximum sentences without making the appropriate findings. In both assignments of error, appellant argues that the ex post facto clause prevents a retroactive application of Foster to his case. *Page 18 
 {¶ 63} We disagree with appellant that the trial court was required to make findings prior to imposing consecutive and maximum sentences. InState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the Supreme Court of Ohio found several provisions of S.B. 2, including R.C.2929.14(E)(4) and R.C. 2929.14(C), which governed consecutive and maximum sentences, unconstitutional. The court determined that the sentencing statutes provided for judicial fact-finding which violated the accused's right to a jury trial. Id. at 25. Thus, the court severed the offending portions from the statute. Id. at 29-31. As a result, trial courts now have full discretion when imposing a prison sentence within the statutory range and are no longer required to make findings or iterate reasons for imposing maximum, consecutive or non-minimum sentences. Id. at 30.
 {¶ 64} In the instant matter, appellant was sentenced six months after the Foster decision. Accordingly, the trial court was not required to make findings prior to imposing consecutive or maximum sentences. Accordingly, appellant's argument in this regard is without merit.
 {¶ 65} We next consider appellant's argument that application ofFoster to defendants whose alleged criminal conduct pre-datesFoster violates the ex post facto clause of Article I, Section 10, of the United States Constitution and the Due Process Clause of theFourteenth Amendment. We have addressed this issue on numerous occasions, each time finding no merit to the argument. State v.Ford, Cuyahoga App. No. 88236, 2007-Ohio-2645; State v. Lawwill, Cuyahoga App. No. *Page 19 
88251, 2007-Ohio-2627; State v. Parks, Cuyahoga App. No. 88671,2007-Ohio-2518; State v. Gray, Cuyahoga App. No. 88238, 2007-Ohio-2498;State v. McCollins, Cuyahoga App. No. 88657, 2007-Ohio-2380.
 {¶ 66} In rejecting appellant's argument in State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715, we stated the following:
 {¶ 67} "In the instant case, Mallette had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced. Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none existed. As a result, we conclude that the remedial holding of Foster does not violate Mallette's due process rights or the ex post facto principles contained therein."
 {¶ 68} Adhering to the conclusion reached in Mallette, supra, and the other cases cited, we find that the trial court did not violate appellant's due process rights or the ex post facto principles contained therein by imposing maximum or consecutive sentences. Appellant was sentenced within the same statutory range for each of the underlying felony convictions and within the range for the gun specifications that was in existence at the time he committed the crimes. Accordingly, appellant's fourth and fifth assignments of error are without merit.
Judgment affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 20 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and KENNETH A. ROCCO, J., CONCUR *Page 1