JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Christopher Miller appeals the trial court's denial of his motion for a new trial. Miller assigns the following errors for our review:
 "I. Defendant was denied due process of law when he was not granted post-conviction relief on his motion for a new trial or post-conviction relief."
 "II. Defendant was denied due process of law when the court summarily denied defendant's motion for a new trial or, in the alternative, petition for post-conviction relief."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On January 30, 2002, a jury found Miller guilty of intimidation, aggravated burglary, kidnapping, aggravated robbery, felonious assault, and rape. Miller appealed his convictions, which we affirmed inState v. Miller,[1] stating:
 "Two men raped and beat Lisa Bower after forcing their way into her apartment. They robbed her of a cell phone, her car charger, and her purse. Cleveland Heights police charged Miller as a result of their investigation of records from Bower's stolen cell phone. The investigation led Detective Schmitt to Nicole Head, who had received several phone calls made from the stolen cell phone by Miller. From a photo array compiled by Detective Schmitt, Bower identified Miller as one of her attackers." *Page 2 
 "Although the scientific evidence confirmed a presence of semen, the DNA did not match Miller's. Further, in his statements to police, Miller admitted to placing the cell phone in a sewer near his home when he learned the police were investigating him in connection with this incident."[2]
 {¶ 4} However, finding error in the imposition of consecutive sentences, without a specific finding regarding proportionality, we remanded the matter for resentencing. Miller also appealed to the Ohio Supreme Court, which denied jurisdiction.[3]
 {¶ 5} Thereafter, Miller filed a motion for a new trial or post-conviction relief claiming that the State had failed to provide exculpatory evidence. Specifically, Miller argued that the State suppressed the identity and statements of two witnesses who lived in the same apartment building as the victim and attended the victim immediately following the attack. After a hearing, on October 23, 2003, the trial court denied the motion, which Miller subsequently appealed. We also rejected Miller's contention and affirmed the trial court's decision in State v. Miller[4]
 {¶ 6} Upon remand, from our decision in Miller's direct appeal, the trial court imposed the same sentence with additional findings. Miller appealed the sentence the trial court imposed. In State v.Miller,[5] we affirmed Miller's sentence. However, *Page 3 
the Ohio Supreme Court reversed and remanded Miller's sentence to comply with its pronouncements in State v. Foster[6]
 {¶ 7} On September 13, 2006, Miller sought leave to file a motion for a new trial based on newly discovered evidence. On February 16, 2006, the trial court granted Miller leave to file the motion. On April 27, 2007, Miller filed his motion for new trial, which the State opposed.
 {¶ 8} In the motion for new trial, Miller stated that subsequent to his trial, the State identified two additional individuals, Richard Stadmire and Charles Boyd, concerning the events at the home of the victim. The Cuyahoga County Grand Jury indicted Stadmire for two counts of rape, one count of aggravated robbery, and one count of kidnapping. For his part in the events, the grand jury indicted Boyd on one count of aggravated robbery.
 {¶ 9} Miller stated that at his trial, the State proceeded under the theory that there were only two persons involved in the attack on the victim. However, Miller alleged that in Stadmire's trial, the State proceeded on the theory that there were three people involved in the attack, even though the victim testified that only two people were involved. Thus, Miller argued that the State's inconsistent positions, regarding the same incident, entitles him to a new trial. *Page 4 
 {¶ 10} On May 23, 2007, the trial court denied the motion without a hearing. Miller subsequently moved the court to issue findings of fact and conclusions of law, which the trial court also denied.
 Motion for New Trial / Post Conviction Relief {¶ 11} In the first assigned error, Miller argues the trial court erred in denying his post conviction relief petition for a new trial. We disagree.
 {¶ 12} The allowance or denial of a motion for a new trial is within the competence and discretion of the trial judge, and that decision will not be disturbed absent a showing of an abuse of discretion.[7] The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[8] The discretionary decision to grant a motion for a new trial is an extraordinary measure which should be used only when the evidence presented weighs heavily in favor of the moving party.[9]
 {¶ 13} Crim.R. 33, which governs motions for new trial, provides in pertinent part as follows: *Page 5 
 "When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce * * * in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given * * *."[10]
 {¶ 14} In order to obtain a new trial based upon newly discovered evidence, a defendant must show that "the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence."[11]
 {¶ 15} In the instant case, Miller argues he is entitled to a new trial because the subsequent prosecution of Stadmire and Boyd for the attack on the victim exonerates him. Specifically, Miller argues that in the Stadmire trial, the State changed the theory of the case, claiming that three people were involved in the attack, versus the two, the State argued in his trial. We are not persuaded.
 {¶ 16} Initially, we note the record indicates that subsequent to Miller's trial, the State discovered that semen taken from the victim's rape kit and clothing, which was entered into the CODIS database, returned a DNA match to Stadmire. In *Page 6 
addition, investigation by the Cleveland Heights Police Department led to Boyd, who gave a statement implicating himself, Miller, and Stadmire.[12]
 {¶ 17} When Stadmire was brought to trial, the State presented the testimony of Boyd, who testified that "[He] stood as a look-out for appellant and Miller while they raped the victim and pillaged her home. He explained that he entered the apartment after the rapes and noticed the victim on the floor with a towel over her head."[13]
 {¶ 18} We also note that the victim identified Miller as one of the two men who attacked and raped her. In Miller's direct appeal of his conviction, he took issue with the victims identification. In affirming Miller's conviction, we stated:
 "Bower testified Detective Schmitt showed her a photo array consisting of six black males. Bower, in the presence of Schmitt and her aunt, identified Miller. Bower and Schmitt also testified Bower did not see any photographs prior to April 30, 2001 and she did not see Miller's arrest photo until after his preliminary hearing.
 Regarding Bower's ability to view Miller on the night of the incident, Bower described Miller as a 5'10" light brown-toned male with big brown eyes wearing either very short hair or a black bandana and a light shirt with a gray jacket that appeared to be buttoned up halfway. The white shirt seemed to have circular writing across the front. Bower first observed Miller at the top of the stairs for approximately one minute. The second time Bower *Page 7 saw Miller's face was when he raped her. Bower stated the light was in front of him and was about five feet away.
 Based on the testimony presented by Bower and Schmitt, we conclude the identification was not impermissibly suggestive. Accordingly, we overrule the second assigned error."[14]
 {¶ 19} In addition, at Stadmire's trial, the victim's account regarding Miller's involvement and participation in the attack remained unchanged. At Stadmire's trial, the victim testified that Miller, accompanied by another male, pointed a gun at her neck, forced her to the kitchen, then against a wall, and pistol whipped her. Miller then forced her to the floor, ordered her to disrobe, pulled her shirt over her head and placed a towel over her face. She further testified that Miller continued to point the gun to her head while the other male digitally penetrated her against her will and then, in a separate act, forcefully engaged in sexual intercourse with her and ejaculated in her vagina.[15]
 {¶ 20} We conclude on the record before us that the subsequent prosecution and conviction of Stadmire and Boyd does not exonerate Miller, but, instead, serves to reaffirm Miller's involvement in the attack on the victim. Here, because the victim's face was covered with her shirt and a dishtowel, she was unable to identify *Page 8 
the second attacker. However, the record is clear that the victim has not wavered regarding Miller's identity.
 {¶ 21} We further conclude that the revelation that Boyd was the third participant in the attack does not exonerate Miller, or change the State's theory of the case. The record indicates that during the attack, the victim was unable to determine whether anyone was present outside her apartment. Boyd testified that he entered the victim's apartment after the rapes and noticed the victim on the floor with her face covered with a towel. Thus, even though Boyd entered the apartment, the victim was unable to discern his presence.
 {¶ 22} Finally, we conclude that the introduction of Boyd as the third participant in the attack provides a complete picture of the events as they unfolded that night, and serves to reaffirm Miller's involvement. This was not a change in the State's theory of the case. Thus, the trial court decision denying Miller's motion for a new trial was not an abuse of discretion. Accordingly, we overrule the first assigned error.
 {¶ 23} Our disposition of the first assigned error renders moot, Miller's second assigned error, wherein he argues the trial court erred in denying his motion for a new trial without conducting a hearing.[16] *Page 9 
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and ANN DYKE, J., CONCUR
[1] Cuyahoga App. No. 80999, 2003-Ohio-164.
[2] Id.
[3] State v. Miller, 99 Ohio St.3d 1412, 2003-Ohio-2454.
[4] Cuyahoga App. No 82100, 2003-Ohio-2320.
[5] Cuyahoga App. No. 85564, 2005-Ohio-4583
[6] 109 Ohio St.3d 1, 2006-Ohio-856. See In re Ohio Crim. SentencingStatutes Cases, 109 Ohio St.3d 313, 2006-Ohio-2109.
[7] State v. Newell, Cuyhaoga App. No. 84525, 2004-Ohio-6917 citingState v. Hill (1992), 64 Ohio St.3d 313, 333, 1992-Ohio-43.
[8] State v. Hicks, 6th Dist. No. L-02-1254, 2003-Ohio-4968, citing State v. Adams (1980), 62 Ohio St.2d 151,157.
[9] State v. Otten (1986), 33 Ohio App.3d 339.
[10] Crim.R. 33(A)(6).
[11] State v. Harris, Cuyahoga App. No. 89156, 2008-Ohio-934 quotingState v. Petro (1947), 148 Ohio St. 505, syllabus.
[12] State v. Stadmire, Cuyahoga App. No. 88735, 2007-Ohio-3644.
[13] Id.
[14] State v. Miller, Cuyahoga App. No. 80999, 2003-Ohio-164.
[15] Stadmire, supra at P 31.
[16] App.R. 12(A)(1)(C). *Page 1