JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Dwayne Harris, appeals from a December 5, 2006 judgment of the Cuyahoga County Court of Common Pleas, denying his petition for postconviction relief to vacate his conviction and set aside his sentence, his motion for a new trial, and his motion to release and transport physical evidence for DNA testing. For the following reasons, we affirm.
 {¶ 2} In 1989, Harris was found guilty by a jury of rape, kidnapping, and felonious assault. Briefly, the facts at trial established that Harris forced the victim into his car at gunpoint, shot her when she refused to remove her clothes, bit her on the cheek, and then raped her. See State v. Harris (Dec. 13, 1990), 8th Dist. Nos. *Page 3 
57920, 57857, and 57855, 1990 Ohio App. LEXIS 5451 ("Harris I"), (where this court upheld his convictions).
 {¶ 3} Over the past eighteen years, Harris has filed numerous motions with the trial court. The following are pertinent to the present appeal.
 {¶ 4} On June 10, 1991, Harris filed a petition for postconviction relief pursuant to R.C. 2953.21. On June 13, 1991, the trial court denied it.
 {¶ 5} On April 26, 2004, Harris filed an application for DNA testing. The state responded, having no objection to the request. The trial court granted Harris' application on July 26, 2004.[1] On April 4, 2006, the state filed the Bureau of Criminal Identification and Investigation's ("BCI") laboratory report of the DNA testing results.
 {¶ 6} On September 7, 2006, Harris filed a petition for postconviction relief to vacate his conviction and set aside his sentence, a motion for a new trial, and a motion to release and transport physical evidence for independent DNA analysis. On December 5, 2006, the trial court denied his petition and motions.
 {¶ 7} It is from this judgment that Harris now appeals, raising eight assignments of error (paraphrased for ease of understanding):
 {¶ 8} (1) The trial court erred when it ruled that appellant's petition was filed untimely, pursuant to R.C. 2953.21 and 2953.23. *Page 4 
 {¶ 9} (2) The trial court erred when it ruled that petitioner Harris was not wrongfully convicted because there was no forensic evidence linking him to the crime and the forensic evidence which was presented was shown to be incomplete.
 {¶ 10} (3) The trial court erred when it ruled that petitioner was not wrongfully convicted because the prosecutor withheld exculpatory evidence.
 {¶ 11} (4) The trial court erred when it ruled that petitioner was not wrongfully convicted because the alleged victim has now admitted that she fabricated the attack.
 {¶ 12} (5) The trial court erred when it ruled that petitioner was not denied his right to effective assistance of counsel because the trial counsel failed to use the exculpatory evidence.
 {¶ 13} (6) The trial court erred when it denied petitioner's leave to file a motion for new trial pursuant to Crim.R. 33(A)(6).
 {¶ 14} (7) DNA evidence was contaminated with petitioner's blood that was withdrawn from him in the county jail on February 16, 1989 in Case No. CR-236656.
 {¶ 15} (8) The petitioner is actually innocent, and actual innocence relieves any default.
 {¶ 16} At the outset, we note that on March 30, 2007, the state filed a motion to dismiss the present appeal. This court has not yet ruled on this motion and thus, we will do so now. *Page 5 
 {¶ 17} In its motion, the state asserts that when Harris filed his notice of appeal, he indicated the date of the judgment he was appealing as June 6, 2006. In this entry, the trial court denied Harris' motion requesting that his sentence conform to the new law of S.B. 2, and as the state contends, it has nothing to do with the errors he has raised here. Harris did appeal the June 6, 2006 judgment, however, he voluntarily dismissed it on April 18, 2007. That case, State v.Harris, Cuyahoga App. No. 88329, is not the present appeal. The instant appeal addresses the trial court's December 5, 2006 judgment. Therefore, the state's motion to dismiss is denied.
 {¶ 18} Harris' first, second, and eighth assignments of error address issues relating to Harris' petition for postconviction relief with respect to the DNA testing results. Therefore, this court will address them together. In these assignments, Harris argues that (1) the trial court erred when it dismissed his petition as untimely; (2) the trial court erred when it found there was forensic evidence linking him to the crime; and (3) the results show he is actually innocent.
 {¶ 19} Since a postconviction relief proceeding is a collateral civil attack on a judgment, the judgment of the trial court is reviewed under the abuse of discretion standard. State v. Gondor, 112 Ohio St.3d 377,2006-Ohio-6679, at _58. An abuse of discretion is more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157. *Page 6 
 {¶ 20} Although the trial court noted the state conceded that Harris' postconviction petition was timely filed with respect to his claims regarding the DNA results, the trial court disagreed. The court concluded that because Harris could not show "actual innocence," his postconviction relief petition was untimely filed.
 {¶ 21} We agree with the trial court's denial of Harris' postconviction relief petition regarding his DNA claims, but not precisely for the reason stated by the trial court. Harris' petition was clearly untimely. However, it was because he did not meet either of the conditions set forth in R.C. 2953.23(A), giving a trial court jurisdiction over an untimely or successive postconviction relief petition, that the trial court could not entertain the petition.
 {¶ 22} As the trial court noted, Harris previously filed a postconviction relief petition. Therefore, the postconviction petition at issue here is a successive petition. Under R.C. 2953.23(A), a trial court may entertain a successive petition only in limited circumstances; i.e., if a petitioner establishes one of the two following conditions:
 {¶ 23} (1) The petitioner was either "unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief," or "the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation," and "[t]he petitioner shows by clear and convincing evidence that, but for the constitutional error at trial, no *Page 7 
reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted."
 {¶ 24} (2) The petitioner was convicted of a felony and is "an inmate for whom DNA testing was performed * * * and analyzed in the context of and upon consideration of all available evidence related to the inmate's case * * *, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense * * *."
 {¶ 25} After a review of the record, it is our view that Harris did not establish either of the conditions set forth in R.C. 2953.23(A) that would give the trial court jurisdiction to entertain his petition.
 {¶ 26} "Actual innocence" under R.C. 2953.21(A)(1)(b) "means that, had the results of the DNA testing * * * been presented at trial, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case * * * no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *."
 {¶ 27} Harris argues that the DNA test results show the presence of an unidentified third person and that this raises "doubt" that he is the perpetrator.[2] We agree with the trial court, however, that "doubt" does not rise to the level of "actual *Page 8 
innocence" under R.C. 2953.21(A)(1)(b); i.e., that no reasonable factfinder would have found Harris guilty.
 {¶ 28} In denying his petition, the trial court reviewed all of the admissible evidence before concluding that Harris did not establish "actual innocence." First, it reviewed the evidence submitted at trial, which this court summarized in Harris I. It then thoroughly reviewed the BCI report. It found that BCI had tested several items in evidence from the victim, including two "cuttings from blue jeans taken from the victim upon which semen had been identified," as well as a swab taken from the victims's bitten cheek. The trial court concluded that the BCI report determined that the DNA on three items was consistent with that of Harris' DNA.
 {¶ 29} The trial court also pointed out the DNA found on the victim's blue jeans consisted of a "sperm fraction," and this fraction matched Harris' DNA. The trial court noted that, "[n]owhere in Harris' petition does he explain how his sperm cells could have ended up on the victim's blue jeans."[3] After reviewing all admissible evidence, the trial court concluded that the "DNA taken from the victim's body reconfirms the jury's verdict in triplicate." We agree with the well-reasoned opinion of the trial court that the DNA results do not establish Harris' "actual innocence," but rather, do just the opposite and confirm his guilt. Therefore, the trial court did not abuse its discretion when it denied Harris' postconviction relief petition with respect *Page 9 
to the DNA testing. First, the DNA results did not clearly and convincingly establish his "actual innocence" under R.C. 2953.23(A)(2). And the DNA evidence would not meet the conditions set forth in R.C.2953.23(A)(1) either. We agree that DNA testing was not available at the time of his trial and thus, could arguably be considered "newly discovered evidence." However, for essentially the same reasons Harris could not establish "actual innocence," he also did not establish that "no reasonable factfinder would have found [him] guilty of the offense of which [he] was convicted." R.C. 2953.23(A)(1)(b).
 {¶ 30} Harris' first, second, and eighth assignments of error are not well taken.
 {¶ 31} In his third and fifth assignments of error, Harris argues that the trial court erred when it dismissed his petition because the prosecutor withheld exculpatory evidence and that his trial counsel was ineffective because he did not investigate and discover this evidence.
 {¶ 32} In his petition, Harris stated that "it has only been in recent years" that he has discovered evidence which would exonerate him. Specifically, he maintains that in 1995, six years after his trial, an "attorney found a police report which pointed to another suspect which was never turned over to defense counsel." We agree with the trial court, however, that "Harris offers no explanation whatsoever for waiting *Page 10 
eleven years" to raise this issue of "newly discovered evidence." Accordingly, these claims were untimely filed.
 {¶ 33} In addition, Harris already raised the issue of ineffective assistance of counsel in his previous petition for postconviction relief. In it, he argued that his counsel was ineffective for failing to investigate the facts of his case thoroughly. `"Once ineffective assistance of counsel has been raised and adjudicated, res judicata bars its relitigation.'" State v. Williams, 99 Ohio St.3d 179,2003-Ohio-3079, at _10, quoting State v. Cheren (1995),73 Ohio St.3d 137, 138. Thus, this claim is barred by res judicata.
 {¶ 34} Harris' third and fifth assignments of error are overruled.
 {¶ 35} In his fourth assignment of error, Harris argues that the trial court erred when it dismissed his petition because the victim recanted her original story. In support of this argument, Harris attaches an affidavit of a private investigator, Tom Pavlish. In it, Pavlish simply avers that "[o]n March 1, 2005, I traveled to the residence of Ruth A. Jones. After having identified myself and my purpose, Mrs. Jones stated that she was never sexually assaulted."
 {¶ 36} The trial court found that Pavlish's affidavit lacked "any indicia of reliability," and therefore, found it to be incredible. This court agrees with the trial court.
 {¶ 37} In light of the fact that the victim testified under oath at trial to the events of her attack and rape, as well as being shot and bitten by her attacker, the trial court *Page 11 
did not abuse its discretion by disregarding Pavlish's affidavit. Moreover, DNA testing has since confirmed that DNA taken from the victim's clothing, including sperm fractions, and from the victim's bitten cheek, is consistent with Harris' DNA.
 {¶ 38} Additionally, the court is free to assess the credibility of evidentiary documents submitted in support of a postconviction relief petition. State v. Calhoun (1999), 86 Ohio St.3d 279, 284. The evidence must consist of materials that adhere to the rules of evidence; inherently unreliable documents will not suffice. See State v.Brinkley, 6th Dist. No. L-04-1066, 2004-Ohio-5666, at _12-14 (affidavit of an investigator not credible where the affidavit contained hearsay statements of a potential witness and no exception to rule against hearsay applied to said statements).
 {¶ 39} Therefore, the trial court did not abuse its discretion when it disregarded the affidavit, which was based on hearsay and wholly inconsistent with the admissible evidence submitted at trial and the DNA results. Harris' fourth assignment of error is overruled.
 {¶ 40} In Harris' sixth assignment of error, he argues that the trial court erred when it did not grant his leave to file a motion for a new trial. We disagree.
 {¶ 41} An appellate court reviews a trial court's determination of a Crim.R. 33 motion under an abuse of discretion standard. State v.Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. *Page 12 
 {¶ 42} Crim.R. 33 governs motions for new trial. Crim.R. 33(A)(6) provides the following as one of the grounds upon which a new trial may be granted on a defendant's motion:
 {¶ 43} "When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce * * * in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given * * *."
 {¶ 44} Crim.R. 33(B) further provides the following limitations on the time in which such a motion can be filed:
 {¶ 45} "Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered * * *. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period."
 {¶ 46} Upon review of the record, it is clear that Harris filed his motion for a new trial outside of the 120-day limit and did not seek an order from the court finding that he was unavoidably prevented from discovering such evidence within the time *Page 13 
period set forth in Crim.R. 33(B). Accordingly, we cannot find that the trial court abused its discretion in denying his motion for a new trial.
 {¶ 47} Even if Harris had filed his motion for a new trial timely, this court would still uphold the trial court's denial of it.
 {¶ 48} In order to obtain a new trial based upon newly discovered evidence, a defendant must show that "the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Petro (1947), 148 Ohio St. 505, syllabus.
 {¶ 49} It is our view that under Petro, Harris has not presented "newly discovered evidence" that discloses a strong probability that it would change the outcome if a new trial was granted. As summarized previously, the evidence presented at trial, as well as the results of the recent DNA testing, overwhelmingly prove that Harris was guilty of the crimes for which he was convicted. Accordingly, we conclude the trial court did not err when it denied Harris' motion for a new trial. Harris' sixth assignment of error is overruled.
 {¶ 50} In his seventh assignment of error, Harris appears to argue that the DNA evidence was contaminated with his blood when it was withdrawn from him in *Page 14 
an unrelated rape case (where he pled guilty), while he was in the county jail in February 1989.
 {¶ 51} Harris' argument is vague and confusing. He seems to be arguing that the prosecutor and a former Cleveland police officer responsible for handling the evidence in his case, were faulted in another case for "hiding key evidence, tampering with evidence, and even lying to get [a] conviction." However, Harris does not point to any evidence in the record or cite to any legal authority in support of his argument as required under App.R. 16. Thus, under App.R. 12(A)(2), this court may disregard this assignment. Harris' seventh assignment of error is not well taken.
 {¶ 52} Therefore, Harris' eight assignments of error are overruled and the judgment of the Cuyahoga County Court of Common Pleas is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and *Page 15 
SEAN C. GALLAGHER, J., CONCUR.
[1] The trial court later clarified its July 26, 2004 entry upon the state's motion. It had originally granted Harris' application for DNA testing in this case as well as another rape case (where Harris had pleaded guilty). In a January 13, 2005 entry, the trial court clarified that Harris' DNA application was granted only with respect to the current case.
[2] Harris raises several arguments in his first assignment of error, in addition to issues relating to the DNA testing results. However, this court will address them separately, as he also raises each of the issues in separate assignments of error.
[3] The trial court also noted that Harris never raised the defense that sex between him and the victim was consensual. *Page 1