JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Angelo Vaughn, was convicted in the Cuyahoga County Court of Common Pleas on one count of attempted murder, two counts of aggravated robbery, and one count of felonious assault, each with corresponding notice of prior conviction and repeat violent offender (RVO) specifications. A jury heard the trial on the substantive counts and found appellant guilty on the four counts as charged. The specifications were bifurcated and heard by the trial court. After appellant stipulated to prior convictions for grand theft and murder, the trial court found appellant guilty on the repeat violent offender specifications. In sentencing, the court merged the felonious assault conviction with the attempted murder conviction and imposed a sentence of 10 years. The court also merged the two aggravated robbery convictions and imposed a consecutive 10-year sentence. On the RVO specifications, the court added two additional consecutive terms of 10 years, resulting in an aggregate sentence of 40 years in prison.
 {¶ 2} Appellant appeals his conviction and sentence, raising five assignments of error for review. After review of the record and for the reasons stated below, we affirm. *Page 4 
 {¶ 3} The facts adduced at trial reveal that the victim had solicited appellant for a date on Cleveland's near west side a few days before New Year's in 2006. Appellant, driving his girlfriend's car, followed the victim back to the victim's home on the city's east side for the sexual encounter. Appellant stayed with the victim for several days during which time the victim drove appellant to his former girlfriend's house to return her car and pick up some of his clothes. On two occasions the victim drove appellant to an ATM machine and then to a house on Addison Avenue in Cleveland where appellant bought crack cocaine. On the second trip to the ATM, appellant was unable to obtain money because his account was overdrawn.
 {¶ 4} On January 3, 2007, the victim took an afternoon nap on his bed before going to his second-shift job. He woke up to someone hitting him in the head with a sharp metal object. He fell to the floor where the attacker jumped on top of him and continued hitting him while demanding money and also demanding to know where the victim kept his money. The victim told the attacker that the money was on top of the kitchen cabinet. When the attacker finally got off of him, the victim was able to call 911 before passing out. The victim's money and his car were taken. The victim did not identify the assailant in the 911 call but when questioned at the hospital after the attack, he identified appellant as the person who assaulted him. *Page 5 
 {¶ 5} On the night of the attack, police found the victim's car being driven by Khalil Woods. Woods testified that he knew appellant through a mutual friend. Woods stated that on the night of the attack, he saw appellant at that mutual friend's house and appellant gave him the keys and let him use the car.
 {¶ 6} In addition to the victim and Woods, the state presented testimony from the victim's mother and from four members of the Cleveland police force who testified about their investigation and about their collection of evidence in the case.
 {¶ 7} In this appeal, appellant assigns the following errors.
 {¶ 8} Assignments of error 1A and B are closely interrelated and will be addressed together.
 {¶ 9} "1A. The trial court abused its discretion in denying Angelo Vaughn a psychiatric referral.
 {¶ 10} "1B. Trial counsel's decision to not request a pre-trial psychiatric referral was ineffective."
 {¶ 11} Regarding a criminal defendant's competency to stand trial, R.C. 2945.37(B) provides:
 {¶ 12} "In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this *Page 6 
section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion."
 {¶ 13} The decision whether to hold a competency hearing once trial has begun is left to the discretion of the trial court. "The right to a hearing rises to the level of a constitutional guarantee when the record contains sufficient `indicia of incompetency' to necessitate inquiry to ensure the defendant's right to a fair trial. Objective indications such as medical reports, specific references by defense counsel to irrational behavior, or the defendant's demeanor during trial are all relevant in determining whether good cause was shown after the trial had begun."State v. Thomas, 97 Ohio St.3d 309, 2002-Ohio-6624, 37 (internal citation omitted).
 {¶ 14} The record reflects that appellant raised the issue of a competency hearing for the first time after trial had commenced and without advising his counsel of his intent. Appellant addressed the court and stated:
 {¶ 15} "On 4/10/07, I wrote [defense counsel] a letter, when I found out that he was representing me, and I explained to him about just getting out of prison for doing 20 years, that I just tried to commit suicide and I was on psychiatric medication. I told him all this and I told him about how I came in contact with the defendant — the victim and everything, and I just wanted that on the record that I brung this to my attorney's attention. *Page 7 
 {¶ 16} "I've been looking for some help, I went to Charity Hospital mental ward and I went through drug counseling and all of it and that's all I got to say. Thank you."
 {¶ 17} We find no error in the trial court failing to hold a competency hearing after trial had commenced. The record does not contain sufficient indicia of incompetency to require such a hearing. There is no evidence that appellant was incapable of understanding the proceedings or of assisting counsel in his defense. The record shows that defense counsel and appellant met before trial and discussed trial preparation and the possibility of a plea bargain. Defense counsel neither mentioned any irrational behavior, nor suggested that defendant was incompetent. There is no evidence in the record to support appellant's assertion that he sent a letter to counsel, or that if he had, that counsel received it.
 {¶ 18} Appellant's demeanor before the trial court also fails to indicate a need to question his competency to stand trial. He was polite and rational when addressing the court. Additionally, appellant's desire to get the matter "on the record," indicates an understanding and appreciation of trial procedure. Finding no error, assignment of error 1A is overruled.
 {¶ 19} In assignment of error 1B, appellant argues that his counsel was ineffective for failing to ask the trial court to hold a hearing or order a psychiatric examination to determine his competency to stand trial. "Reversal of *Page 8 
convictions on ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial." Thomas at _40, citingStrickland v. Washington (1984), 466 U.S. 668, 687. In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985), 17 Ohio St.3d 98, 100;Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301.
 {¶ 20} As discussed above, appellant did not display sufficient indicia of incompetency to warrant a competency hearing, therefore, his defense counsel's failure to request the trial court to order a competency hearing did not constitute deficient performance. The record reflects that appellant's counsel competently represented him at trial. Assignment of error 1B is overruled.
 {¶ 21} Appellant's second and fourth assignments of error, challenging the Supreme Court of Ohio's decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, are substantially interrelated and will be reviewed together.
 {¶ 22} "2. The repeat violent offender specification is unconstitutional per Blakely v. Washington (2004), 542 US 296.
 {¶ 23} "4. Angelo Vaughn is entitled to a presumptive minimum sentence because a greater sentence would violate the Ex Post Facto and Due Process Clauses of the United States Constitution." *Page 9 
 {¶ 24} Appellant asserts that the repeat violent offender specification, as amended by Foster, is unconstitutional. He argues that the legislature mandated certain factfinding before the imposition of an RVO sentence and therefore the imposition of an RVO sentence without that factfinding violates his rights. Appellant further argues that he is entitled to the pre-Foster "presumptive minimum" sentence and that the imposition by the court of more than a minimum sentence violates his constitutional rights. He argues that the Foster sentencing decision should be reconsidered and overruled.
 {¶ 25} In Foster, the specification contained in R.C. 2929.14(D)(2)(b), requiring judicial factfinding before repeat violent offender enhancements could be imposed, was found to be unconstitutional. The court severed the offending provision and held: "After the severance, judicial factfinding is not required before imposition of additional penalties for repeat violent offender and major drug offender specifications." Foster, paragraph six of the syllabus.
 {¶ 26} The court also severed those provisions of the sentencing statutes that related to a presumptive minimum sentence, finding that those sections of the statutes that "create presumptive minimum or concurrent terms or require judicial factfinding to overcome the presumption, have no meaning now that judicial findings are unconstitutional." Foster at _98. The Foster court held that: "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their *Page 10 
reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster, paragraph seven of the syllabus.
 {¶ 27} In Foster, the Supreme Court of Ohio determined that the severance remedy best preserves the goals and objectives of the General Assembly's sentencing reforms. The United States Supreme Court denied certiorari on October 16, 2006. Foster v. Ohio (2006), 127 S.Ct. 442,166 L.Ed.2d 314. The Ohio Supreme Court has also refused to reconsider its decision. See State v. Foster, 109 Ohio St.3d 1408, 2006-Ohio-1703;State v. Quinones, 109 Ohio St.3d 1408, 2006-Ohio-1703. As an intermediate appellate court, we are bound by the Foster decision and cannot overrule it or declare it unconstitutional.
 {¶ 28} The trial court's imposition of a maximum 10-year prison term on the attempted murder and aggravated robbery convictions, and the imposition of an additional 10-year prison term on each of the two RVO specifications are authorized by the sentencing statutes and are not contrary to law. We find no error.
 {¶ 29} Finally, as appellant notes in his fourth assignment of error, this court has previously addressed and rejected the argument that the imposition of more than a minimum sentence violates the due process clause or the ex post facto clause. See State v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715.
 {¶ 30} Accordingly, appellant's second and fourth assigned errors are overruled. *Page 11 
 {¶ 31} In his third assignment of error, appellant challenges the state's evidence supporting the convictions.
 {¶ 32} "3. Angelo Vaughn's conviction should be reversed due to insufficiency of evidence and a failure of the state to carry the manifest weight of the evidence burden."
 {¶ 33} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 34} In evaluating a challenge to the verdict based on the manifest weight of the evidence, this court sits as the "thirteenth juror" and reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins at 387. "The discretionary power to grant a new trial should be exercised only in *Page 12 
the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 35} This court is mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest."State v. Antill (1964), 176 Ohio St. 61, 67.
 {¶ 36} Appellant was convicted of attempted murder and aggravated robbery. According to R.C. 2903.02(A), the statute defining the offense of murder, "no person shall purposely cause the death of another." According to R.C. 2923.02(A), "no person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense." Accordingly, in order to properly obtain a conviction for attempted murder, the state was obligated to show, beyond a reasonable doubt, that appellant purposely or knowingly engaged in conduct which, if successful, would have resulted in the victim's murder.
 {¶ 37} According to R.C. 2911.01(A)(3), the statute defining aggravated robbery, "no person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall * * * inflict, or attempt to inflict, serious physical harm on another." *Page 13 
 {¶ 38} The victim testified that appellant hit him in the head repeatedly with a sharp object while demanding money. He stated that after the attack, cash was taken from his apartment and his car was missing. Woods testified that appellant gave him the use of the victim's car the evening of the attack. The medical evidence showed that the victim suffered a serious head injury requiring 28 days in intensive care and an additional 30 days in the hospital on the brain injury rehabilitation floor. The evidence also showed that appellant's injuries require him to wear a helmet to protect his skull pending future surgery and that he needs to wear ankle and arm braces and use a wheelchair when he needs to move more than a short distance. This evidence is sufficient to support the jury verdict on attempted murder and aggravated robbery as a matter of law.
 {¶ 39} A "repeat violent offender" is defined as "a person * * * being sentenced for committing or for complicity in committing * * * murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree," where the person previously was convicted of or pleaded guilty to one of those same offenses. R.C. 2929.01(DD)(1) and (2). The record reflects that appellant was previously convicted of murder in the Erie County Court of Common Pleas. Thus, appellant's convictions on the two RVO specifications is also supported by sufficient evidence. *Page 14 
 {¶ 40} Appellant argues that the convictions are against the manifest weight of the evidence because the serious head injury suffered by the victim renders his identification of appellant as the assailant unreliable. He points out that at the time of the assault, in both the 911 tapes and the EMS report, the assailant is unnamed or described as an unknown male. He also points to the fingerprints of another man found at the victim's apartment.
 {¶ 41} After reviewing the entire record, including the victim's and other witnesses' testimony, we cannot say that the jury lost its way. It is true that the victim did not identify appellant as his assailant to the EMS attendants immediately after the attack. However, when questioned by police the next day in the hospital, the victim was absolutely certain in his identification of appellant as the attacker. The jury also heard that Woods had two prior drug convictions and was given a plea bargain in exchange for his testimony about how he came to be in possession of the victim's car. The trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility.DeHass, supra. It was up to the jury to believe or disbelieve the witnesses' testimony. On the basis of the record in this case, we cannot say that the verdict is against the manifest weight of the evidence. Appellant's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed. *Page 15 
The court finds there were reasonable grounds for this appeal.
 It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
 A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J., CONCURS
KENNETH A. ROCCO, P.J., CONCURS WITH SEPARATE OPINION