JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Bruce Farmer ("defendant"), appeals from the judgment entered pursuant to a jury trial finding him guilty of aggravated robbery with two firearm specifications. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On July 13, 2005, defendant was indicted by the Cuyahoga County Grand Jury for one count of aggravated robbery, in violation of R.C.2911.01 along with two firearm specifications in accordance with R.C.2941.141 and R.C. 2941.145.
 {¶ 3} On June 26, 2006, defendant filed a motion seeking pretrial voir dire of any identification witnesses for purposes of ascertaining whether his identification was unduly suggestive or otherwise tainted. After a hearing, the trial court indicated that it would deny any request to suppress the identification.
 {¶ 4} On July 26, 2006, a jury trial began.
 {¶ 5} At trial, the victim, Feodor Prigodich ("Feodor"), gave the following testimony: He was 45 years old at the time of the incident. In the early morning hours of May 12, 2005, he was walking home after playing chess most of the night at Nick's, an all-night diner. As he was walking down West 46th Street, he noticed two young men across the street. He testified that he noticed the men because he thought it was odd that the two would be out at 5:15 a.m. on a weekday morning.
 {¶ 6} Feodor kept his eyes on the men but lost site of them while walking. However, he suddenly heard the sound of footsteps rapidly approaching from *Page 4 
behind. Feodor started to run but stopped when he heard the sound of a gun being cocked. Feodor immediately stopped and faced the men with his hands raised in the air. Feodor described one of the men as Hispanic looking, approximately 5'10" tall and 160 pounds.[1] This man went through Feodor's pockets while the other male, later identified as the defendant, pointed a gun at him.
 {¶ 7} The two men stole $40, Feodor's cell phone, and a pair of work gloves before leaving. Feodor did not give chase to the two men because the defendant looked back at him and pointed the gun in his direction. Feodor ran back to Nick's diner and called the police.
 {¶ 8} The Cleveland Police arrived shortly thereafter and Feodor described the gunman as a white male, approximately 5'10" tall and weighing 165 pounds, clean shaven with short blond hair. One week later, on May 18, 2005, Feodor met with Cleveland Police Detective David Borden ("Det. Borden") and provided a formal statement and, using a computer program, generated a computer sketch of the armed attacker. On May 27, 2005, Feodor identified defendant in a photo array as the gunman. Feodor testified that he looked at hundreds of photos before identifying defendant as the gunman. Feodor also identified defendant at trial as the man who robbed him. He testified that he was 100% certain that defendant was the man who robbed him. *Page 5 
 {¶ 9} Next, the State called Detective Borden. He testified that he interviewed the victim on May 18, 2005 and they worked on a composite drawing of the attacker. Det. Borden showed the drawing to other officers and the defendant's name came up. Det. Borden pulled defendant's BMV photo and then called Feodor to come in and view a photo array. Det. Borden testified that he only showed Feodor six photos and that Feodor immediately identified the defendant from a photo array as the male who robbed him at gunpoint.
 {¶ 10} On August 1, 2006, defendant was found guilty of aggravated robbery with both firearm specifications and defendant was sentenced to four years on the aggravated robbery and three years on the firearm specifications, for a total prison term of seven years.
 {¶ 11} Defendant timely appeals and raises the following five assignments of error for our review, which will be addressed together and out of order where appropriate.
 {¶ 12} "II. The trial court erred when it admitted improper victim impact evidence in violation of Mr. Farmer's constitutional right to a fair trial under the Fifth and Sixth Amendments before a jury free from outside influences when the prosecution introduced victim impact evidence during the State's case-in-chief."
 {¶ 13} In his second assignment of error, defendant alleges that the trial court improperly allowed the victim and his friend, Nick Karguljac ("Nick"), the owner of the diner where Feodor regularly played chess, to testify about the effects the crime had *Page 6 
upon the victim. Specifically, defendant argues that none of this testimony was relevant and was offered solely to create sympathy for the victim.
 {¶ 14} As an initial matter, we note that trial counsel did not object to this testimony. Thus, we will review under a plain error standard. Plain error exists when but for the error the outcome of the trial would have been different. State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 15} Victim impact evidence is excluded because it is irrelevant and immaterial to the guilt or innocence of the accused — it principally serves to inflame the passion of the jury. See State v. White (1968),15 Ohio St.2d 146. Nevertheless, the State is not wholly precluded from eliciting testimony from victims that touches on the impact the crime had on the victims because "circumstances of the victims are relevant to the crime as a whole. The victims cannot be separated from the crime."State v. Williams (2003), 99 Ohio St.3d 439, 2003-Ohio-4164.
 {¶ 16} Defendant first complains that Feodor was able to testify about the "impact" of the crime, i.e., that he did not play chess at Nick's diner anymore. However, when the testimony is reviewed in its entirety, it is clear that this testimony was relevant and elicited solely to support the State's position that Feodor clearly remembered the night he was robbed and that defendant was the man who robbed him.
 {¶ 17} "Q: How well would you say you remember that night from what happened to you? *Page 7 
 {¶ 18} "A: The face and the gun, it's like it happened yesterday.
 {¶ 19} "Q: How big of an impact did this event have on your life?
 {¶ 20} "A: Well, I don't go to Nick's anymore unless I get dropped off there. I can't stay until 8, 9:00 in the morning. Basically, I don't play chess there anymore.
 {¶ 21} "Q: So is it your testimony, then, that you remember this night very well?
 {¶ 22} "A: Yes.
 {¶ 23} "Q: Can you just tell the ladies and gentlemen of the jury, just so it's clear, how sure you are that this defendant is the person that robbed you at gunpoint?
 {¶ 24} "A: Unless he has a twin brother, that's the man." (Tr. 170).
 {¶ 25} We do not find that the State's use of the word "impact" was so egregious as to suggest that the entire line of questioning was used to elicit victim impact evidence to "inflame the passion of the jury." SeeState v. White, supra.
 {¶ 26} Next, defendant complains that Nick, who owned the diner where the victim frequently played chess, should not have been able to testify that Feodor was a nice guy and did not cause any problems at his diner. We agree that there was no relevant purpose for this evidence and conclude that it was offered as victim impact evidence. However, we see no possibility that the erroneous admission of this testimony contributed to the jury's verdict. *Page 8 
 {¶ 27} The second assignment of error is overruled.
 {¶ 28} "III. The prosecution violated Mr. Farmer's constitutional rights under Article I, Section 10 of the Ohio Constitution, theFifth Amendment to the United States Constitution and the due process clause of the Fourteenth Amendment to the United States Constitution."
 {¶ 29} In his third assignment of error, defendant argues that he was unfairly prejudiced when the State made improper statements during trial and during arguments. As in the previous assignment of error, since defendant's attorney failed to object during the State's closing statement, we will review under a plain error standard. State v.Long, supra.
 {¶ 30} In order for this Court to reverse a conviction on the grounds of prosecutorial misconduct, we must find that (1) the remarks were improper and (2) that they prejudicially affected substantial rights of the defendant. State v. Smith (1984), 14 Ohio St.3d 13, 14. The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. Id. at 13.
 {¶ 31} Defendant first contends that the prosecutor committed misconduct by eliciting improper and damaging victim impact evidence during the trial. In the previous assignment of error, we held that there was no improper victim evidence introduced at trial and/or that any victim impact evidence was not prejudicial to the defendant. Thus, defendant cannot establish prosecutorial misconduct on this basis. See Id. *Page 9 
 {¶ 32} Next, defendant contends that in his closing statement the prosecutor inferred that he was guilty because he did not call any witnesses on his behalf.
Here, the prosecutor in his closing statement made the following statements:
 {¶ 33} "Why are we here? We are here because the law of this land guarantees anyone is accused of a crime of certain rights * * * anyone who is accused of a crime is entitled to a public trial, a jury trial and a fair one. Anyone accused of a crime is entitled to be represented by an attorney. Anyone accused of a crime has the subpoena power of this Court to force anybody to come and testify on your behalf. And anyone accused of a crime has a right in open Court to have his accuser come forward and confront him.
 {¶ 34} "Those are rights that have been so honored in this case. That's our process. And the accuser * * * has certain rights too.
 {¶ 35} "The right to walk into this courtroom, take that stand and expect to be taken seriously when he tells you something that happened to him. His testimony is evidence, and if that evidence establishes the elements of the case * * * the law says that's enough.
 {¶ 36} "To hold otherwise would send a terrible message to law-abiding citizens * * * if you are a victim of a one-on-one crime, to hold otherwise, the law would say our doors of justice are closed to you. Don't bother calling the police and don't bother coming to court unless you have something to corroborate your testimony." *Page 10 
 {¶ 37} We find no plain error in the prosecutor's closing statements individually or taken as a whole. The prosecutor's comments were used to explain that defendant received a fair trial and that his rights were protected by the proceedings. None of the comments made by the prosecutor referenced the defendant nor did they mention the fact that defendant did not call witnesses on his behalf.
 {¶ 38} The third assignment of error is overruled.
 {¶ 39} "IV. Appellant was deprived of his liberty without due process of law when he was sentenced under a judicially altered, retroactively applied, and substantially is [sic] advantageous statutory framework."
 {¶ 40} In his fourth assignment of error, defendant asserts that the trial court erred in not sentencing him to the minimum term of incarceration. Specifically, defendant contends that he received a harsher sentence as a result of the retroactive application of the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. We disagree and find that defendant's seven-year sentence was not contrary to law.
 {¶ 41} Foster was decided on February 27, 2006 and the trial court sentenced defendant on August 1, 2006. Defendant argues that on the date he committed the offenses for which he was sentenced (May 12, 2005), there was a presumption that the greatest prison sentence he could receive was a minimum sentence of six years. While this is true, it is also true that this presumption could be overcome by the presence of certain facts. In other words, the felony sentencing ranges did not *Page 11 
change in the wake of Foster. Rather, the Ohio Supreme Court excised the judicial fact-finding provisions that it found to be unconstitutional and directed that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶ 100.
 {¶ 42} Accordingly, at the time defendant was sentenced, presumptions of minimum sentences no longer existed. Notwithstanding, defendant still faced the same range of potential prison sentences on the date he committed the subject offenses as he did on the day he was sentenced. Accordingly, defendant's prison term of four years on the aggravated robbery count, rather than the minimum of three years, is not contrary to law.
 {¶ 43} In any case, this Court has already addressed and rejected the ex post facto claims relative to the application of Foster. SeeState v. Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715, ¶¶ 39-48. InMallette, this Court held as follows:
 {¶ 44} "Mallette had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced.Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, nor did it create the possibility of consecutive sentences where none existed. As a result, we conclude that the remedial holding ofFoster does not violate Mallette's due process rights or the ex post facto principles contained therein." Id., followed by State v.Parks, Cuyahoga *Page 12 
App. No. 88671, 2007-Ohio-2518; State v. Jones, Cuyahoga App. No. 88134,2007-Ohio-1301, ¶ 56; State v. Brito, Cuyahoga App. No. 88223,2007-Ohio-1311, ¶ 11.
 {¶ 45} The fourth assignment of error is overruled.
 {¶ 46} "I. Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when his counsel failed to offer expert testimony or otherwise competently challenge the eyewitness's identification.
 {¶ 47} "V. Trial counsel was ineffective for failing to object to improper victim impact evidence, the prosecutor's improper closing argument and the more than minimum sentence that the court imposed in violation of the ex post facto clause."
 {¶ 48} Since the first and fifth assignments of error both relate to defendant's right to the effective assistance of counsel, they shall be addressed together.
 {¶ 49} In order for this Court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.Strickland v. Washington (1984), 466 U.S. 668. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136. To establish prejudice, the defendant must prove that, were it not for counsel's errors, the result of the trial would have been different. Id. *Page 13 
 {¶ 50} Defendant first argues that he was denied the effective assistance of counsel because his trial counsel failed to offer expert testimony to challenge the identification made by Feodor. Specifically, defendant claims that expert testimony would have enabled the jury to properly assess, weigh, and ultimately reject Feodor's testimony.
 {¶ 51} The failure to call an expert does not constitute ineffective assistance of counsel. State v. Nicholas (1993), 66 Ohio St.3d 431, 436. Specifically, under Ohio law, defense counsel does not have to hire an expert identification witness, and, instead, "may rely on cross-examination and closing arguments to impeach eyewitness testimony." Madrigal v. Bagley (N.D. Ohio 2003), 276 F.Supp.2d 744,791.[2]
 {¶ 52} Here, the record reveals that defendant's trial counsel competently cross-examined Feodor's identification of defendant. Specifically, trial counsel noted that (1) Feodor described defendant as clean shaven, yet defendant had a goatee when he was arrested two weeks later; (2) Feodor described defendant as 5'10" and 160 pounds, yet defendant was actually 5'8" and 130 pounds; (3) Feodor did not notice that defendant had two different colored eyes, even though Feodor testified *Page 14 
that he looked into defendant's eyes; (4) Feodor had been up all night playing chess and was likely tired when he was robbed, thereby making his identification less reliable; and (5) Feodor testified in court that he viewed "hundreds" of photos, whereas Det. Borden testified that he only showed Feodor six photos.
 {¶ 53} Clearly, trial counsel competently and sufficiently attempted to discredit Feodor's identification of defendant. The fact that the jury chose to believe Feodor does not mean that defendant was denied effective assistance of counsel. Next, defendant argues that his trial counsel performed deficiently by failing to object to the introduction of victim impact evidence. In the second assignment of error, we held that there was no improper victim evidence introduced at trial and/or that any victim impact evidence was not prejudicial to the defendant. Thus, trial counsel's failure to object was not prejudicial and defendant was not rendered ineffective assistance of counsel. SeeBradley, supra.
 {¶ 54} Next, defendant argues that his trial counsel performed deficiently by failing to object to the prosecutor's improper closing remarks. In the third assignment of error, we held that the prosecutor did not make any improper statements during or at the close of trial. Accordingly, trial counsel's failure to object was not prejudicial and defendant was not rendered ineffective assistance of counsel. SeeBradley, supra.
 {¶ 55} Finally, defendant argues that his trial counsel performed deficiently by failing to object when the trial court sentenced defendant to a term of four years on *Page 15 
the aggravated robbery. Based upon our decision in the fourth assignment of error, defendant has not shown that such failure prejudiced him. The sentence imposed by the trial court was not unconstitutional. Therefore, defendant was not denied effective assistance of counsel on that basis.
 {¶ 56} Defendant's first and fifth assignment of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and MELODY J. STEWART, J., CONCUR
[1] This man was not found or charged in this case.
[2] See, also, Hughes v. Hubbard (C.A.9, 2000), 246 F.3d 674 (cross-examination of witnesses is sufficient to alert jurors to specific conditions that render eyewitness identification unreliable);United States v. Christophe (C.A.9, 1987), 833 F.2d 1296, 1300 (skillful cross-examination of witnesses, coupled with appeals to the experience and common sense of jurors, will sufficiently alert jurors to specific conditions that render a particular eyewitness identification unreliable). *Page 1